### 23453

David Lee HUCKABY, Petitioner v. STATE of South Carolina, Respondent.

(408 S.E. (2d) 242)

Supreme Court

*Assistant Appellate Defender Robert M. Dudek*, of S.C. Office of Appellate Defense, Columbia, *for petitioner.*

*Attorney Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka*, and *Asst. Atty. Gen. Miller W. Shealy, Jr.*, Columbia, *for respondent.*

Submitted March 19, 1991.

Decided Aug. 5, 1991.

TOAL, Justice:

This matter is before this Court on a writ of certiorari from a denial of post conviction relief following a revocation of probation. The Petitioner, Mr. Huckaby, contends that he was denied his Sixth Amendment right to counsel at his probation revocation hearing, and was not afforded the opportunity for a knowing and intelligent waiver of this right. We agree and remand for a new probation revocation hearing.

Mr. Huckaby was convicted in April, 1987, of two counts of distribution of cocaine. He was sentenced to fifteen years suspended upon the payment of a $2,000.00 fine and completion of five years intensive probation with house arrest and required attendance at drug counseling. As part of his intensive probation, Mr. Huckaby was required to report to his probation officer on a weekly basis.

Mr. Huckaby had been required to appear at revocation hearings on two occasions prior to the hearing at issue. The charges at these hearings included: failure to pay the balance of his penalty, failure to pay his supervision fee, and failure to be in compliance with his house arrest by being unavailable to receive telephone calls to his residence. At the first hearing, Mr. Huckaby was represented by counsel and the judge heard supportive testimony from Mr. Huckaby's probation officer

and continued the probation based on the officer's explanations. The presiding judge at the second hearing determined that Mr. Huckaby, who contended that he could not afford counsel, was not entitled to or did not qualify for representation by the public defender. Again the judge heard a supportive report from Mr. Huckaby's probation officer and continued the probation.

On July 21, 1988, Mr. Huckaby was to appear again in court to answer charges of failing to make his weekly reports for four of the five weeks in June, failing to pay his supervision fee and failing to attend alcohol and drug abuse counseling. On the morning of the hearing, Mr. Huckaby went to the probation office prior to his hearing. He spoke to his new probation officer and the officer who headed the probation office. His probation officer had only recently been assigned to him and his only previous contact with this current officer was when he had come to the probation office at the end of the prior month and been given warrants for failing to make his previous weekly reports that month. He explained to the officers that he had missed his weekly reports because his previous officer had informed him that he was going to be reclassified from intensive to regular probation and that he would only be required to report once per month.

The officers also discussed with Mr. Huckaby his failure to attend drug and alcohol counseling. Mr. Huckaby explained to the officers that he had been denied admission to counseling because of his financial limitations. The head officer contacted the drug and alcohol counseling center at Mr. Huckaby's request, and made arrangements for Mr. Huckaby to attend counseling and to pay for the counseling on an extended payment plan.

Mr. Huckaby left the probation office feeling that he had satisfactorily explained his infractions and needed only to appear before the judge as a rote procedural requirement. He assumed that the judge would simply hear explanations from Mr. Huckaby and reports from the parole officers, and then continue his probation as had been done at the two previous hearings.

The probation revocation hearing was conducted by the same judge who had originally sentenced Mr. Huckaby and the judge recognized Mr. Huckaby from his original trial and

sentencing. The judge commented continuously to the effect that the press had been critical of his previous practice in drug cases of suspending sentences and granting probation and that he regretted allowing probation especially when the regime of probation was not properly followed. The judge's comments reflected a clear regret at having originally granted probation to Mr. Huckaby and a desire to conform with public pressure by revoking that probation.

As the hearing began, the judge's first question of Mr. Huckaby was whether he had a lawyer. When Mr. Huckaby responded in the negative, the judge asked him if he understood that he had a right to a lawyer and that if he could not afford one, that the court would appoint one for him. Mr. Huckaby responded affirmatively and the judge asked him if he wanted to "waive that right to a lawyer and go forward with this probation revocation hearing today." Mr. Huckaby responded affirmatively again and the judge proceeded to explain the charges and then asked Mr. Huckaby if he had anything to say for himself. The following colloquy then ensued:

> Mr. Huckaby: Yes, sir, the last time I was in court they—my probation officer that ain't with y'all no more—he told me that I wouldn't be on intensive probation no more—
>
> Judge Eppes: Okay, I'm going to tell you what—You're not going to be on it anymore because you're going to jail for fifteen years.
>
> Revoke his probation.
>
> I get criticized for putting people on probation for selling cocaine.

From the record as described above, it is clear that, after being informed that he had a right to a lawyer and asked if he wished to proceed without one, Mr. Huckaby was only allowed to say "no sir" once, "yes sir" twice and merely begin his statement before being cut off and having his probation revoked. Mr. Huckaby was not only denied his right to counsel without being appraised of the dangers of self-representation without being afforded an informed and knowing waiver of that right; but the denial of that right was exacerbated by the summary nature of the hearing.

## DISCUSSION

We have previously held that all persons charged with probation violations must be advised of their right to counsel. *Barlet v. State*, 288 S.C. 481, 343 S.E. (2d) 620 (1986) [applying *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. (2d) 656 (1973)].

We have also held previously that as part of the Sixth Amendment right to counsel, and the requirement that an accused be apprised of that right, that "the record must demonstrate that the judge conducted a hearing to determine whether a request to proceed *pro se* was accompanied by a knowing and intelligent waiver." *State v. Bateman*, 296 S.C. 367, 369, 373 S.E. (2d) 470, 471 (1988). Also, the record must reflect that "the defendant's decision to represent himself was made with an understanding of the risks of self-representation," *Wroten v. State*, 301 S.C. 293, 391 S.E. (2d) 575, 576 (1990), and that the defendant was "made aware of the dangers and disadvantages of self-representation so that the record will establish he knows what he is doing and his choice is made with eyes open." *Ibid.* [quoting *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. (2d) 562 (1975)]. We now hold that these requirements are equally as applicable to probation revocation hearings as they are in criminal trials, and that a probationer retains his full Sixth Amendment right to counsel.[1]

In *Wroten*, we explained that in conducting a *Faretta* analysis, "the extent of the inquiries made by the trial judge are not conclusive." *Wroten*, 301 S.C. at 294, 391 S.E. (2d) at 576. Rather, to fully determine whether the defendant made an informed decision to waive his right to counsel, we will consider "the entire record including facts presented at the PCR hearing" to ascertain "whether other facts show Petitioner had

---

[1] The State relies on *State v. Franks*, 276 S.C. 636, 281 S.E. (2d) 227 (1981). In *Franks*, we stated that, "while a person convicted of a crime is still restrained within the confines of probation, he does not enjoy the same unfettered constitutional privileges available to those not so confined." *Franks* at 636, 281 S.E. (2d) at 228. We point out that *Franks* merely provided that there is no violation of a probationer's constitutional rights where the warrant for his violation of probation is issued by his probation officer rather than a magistrate. We caution here that the holding in *Franks* is limited to the facts in that case and does not otherwise operate to diminish the rights of an accused in a probation revocation proceeding.

sufficient background or was appraised of his rights by some other source." *Ibid.*

In the case before us, we find that the judge's two questions, which merely apprised the probationer of his right to counsel and asked if he wished to waive the right, do not satisfy the hearing requirement discussed in *Bateman.* Further, we find that the defendant was under the impression that the revocation hearing was an informal procedure which was being conducted as mere formality for having probation continued. The record certainly does not reflect the level of understanding and awareness of the severity of the risks and dangers of his situation which is required by *Wroten.* Finally, we find that Mr. Huckaby did not even actually decide to represent himself but was under the impression that he would not need representation by himself or anyone else because the hearing was simply a rote procedural formality. Mr. Huckaby was never adequately informed of his right to counsel or his need for counsel so that he could make an informed choice as to whether to waive that right.

In determining whether Huckaby made a willing and knowing waiver of counsel, the PCR judge looked solely to the two rote questions which the judge asked at the probation hearing. The PCR judge did not consider whether the questions satisfied the hearing requirement expressed in *Bateman* and we hold that they did not. The PCR judge further did not consider the ultimate question of whether the defendant's understanding satisfied the requirements for a voluntary waiver as explained in *Wroten.* As stated above, we find that from the record it is clear that Huckaby did not have the requisite understanding to make a knowing and intelligent waiver.

For these reasons, the case is reversed and remanded for a new hearing.

GREGORY, C.J., and HARWELL, CHANDLER and FINNY, JJ., concur.